COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Robert G. Montgomery, P. J. |
|  | : | Hon. Kevin W. Popham, J. |
| Plaintiff-Appellee | : | Hon. David M. Gormley |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024 CA 0043 |
| MAZZARNEY L. HARDY | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of Common Pleas, Case No. 2024CR0165R

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 31, 2025

APPEARANCES:

For Plaintiff-Appellee

JODIE M. SCHUMACHER
Prosecuting Attorney
BY: MEGAN HOBART
Assistant Prosecutor
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant

RANDALL E. FRY
90 Darby Drive
Lexington, OH 44904

*Popham, J.,*

{¶1}   Defendant-appellant Mazzarney L. Hardy ["Hardy"] appeals his conviction and sentence after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2}   On March 21, 2024, the Richland County Grand Jury indicted Hardy with three crimes: 1). strangulation, by creating a substantial risk of serious physical harm to another by means of strangulation or suffocation, a felony of the third degree in violation of R.C. 2903.18(B)(2) / (C)(2); 2). strangulation, by causing or creating a substantial risk of physical harm to another by means of strangulation or suffocation, a felony of the fifth degree in violation of R.C. 2903.18(B)(3) / (C)(3); and domestic violence by causing or attempting to cause physical harm, a misdemeanor of the first degree in violation of R.C. 2919.25(A) / (D)(2).

{¶3}   A jury trial commenced on June 11, 2024. The following evidence was presented by the State.

{¶4}   On February 24, 2024, Hardy and K.D. were involved romantically, and were living together in her apartment. At some time around 11:00 p.m., K.D. allowed Hardy to use her car to go visit friends. T. at 29.  Around 3:30 a.m., K.D. telephoned Hardy and asked that he return her car. *Id.* at 28 - 29. Hardy became upset, telling K.D. he would bring the car back to her, pick up his belongings, and leave the apartment. *Id.* at 29. When Hardy arrived at the apartment, an argument ensued between him and K.D. During this time, K.D. became upset when she observed that another male individual, who was inside her car, had apparently driven the car back to the residence. *Id.* at 31.  On her way out of the apartment to see who was in her car, K.D. kicked a box of Hardy's toiletries that had

been left in the doorway. T. at 37. As she started outside, Hardy came up behind K.D. *Id.* at 39. K.D. saw Hardy's arm "flying around [her] throat." *Id.* at 31. K.D. felt pressure around her throat and found it difficult to breathe. *Id.* at 32; 40. Hardy lifted K.D. completely from the ground by her neck and carried her back toward where K.B. had kicked the box of toiletries. *Id.* at 32; 39 - 40. K.D. blacked out for around thirty seconds during this time. *Id.* at 32; 40; 51. Hardy threw K.D. onto the ground, telling her to pick up his stuff or he would "knock her ass out." *Id.* at 43.

{¶5} K.D. described Hardy's arm around her throat as painful until she lost consciousness. T. at 47. K.D. testified that she could not breathe normally because her airway was constricted by the pressure. *Id.* at 32; 40. She broke two of her fingernails struggling to escape from Hardy's grip. *Id.* at 33.

{¶6} Eventually, Hardy's friends convinced him to leave before the police arrived. T. at 32. K.D. drove to the gas station and then returned to her apartment. *Id.* at 46.

{¶7} The following morning, Jason Allen, K.D.'s landlord, was reviewing the video surveillance tapes from the apartment complex. T. at 12. Allen was watching the videos recorded the night before when he noticed what appeared to be an assault. *Id.* at 13 - 14. Allen called the police around 7:30 or 8:00 a.m. on February 24, 2024, to report the incident and to ask the police to do a welfare check on K.D. *Id.* at 16. The video was admitted into evidence during Hardy's jury trial. T. at 16; State's Exhibit 1.

{¶8} Officer Bryce Edwards arrived at the residence around 7:51 a.m. on February 24, 2024. Officer Edwards' report noted that he did not observe any injuries on K.D, and further that K.D. seemed calm and said that there was nothing that she wanted done. T. at 57; 64.

{¶9} The following day, K.D. contacted the police. T. at 53. Officer Alan Edwards arrived at the home on February 25, 2024. *Id.* at 58. He observed some minor injuries to the neck area (redness and striation) and to the back of K.D.'s left arm. Officer Alan Edwards took photos of those injuries. *Id.* at 58; State's Exhibits 2 and 3. After that, K.D. testified that she went to the hospital. *Id.* at 53.

{¶10} The defense rested without presenting evidence.

{¶11} The jury returned with verdicts of not guilty on count one and guilty on counts two and three.

{¶12} Sentencing took place on June 11, 2024. On count two, strangulation, the court sentenced Hardy to twelve months in prison. On count three, domestic violence, the court sentenced Hardy to a concurrent term of six months in the Richland County Jail. The aggregate prison term imposed was twelve months. The court further ordered up to two years of post-release control.

*Assignment of Error*

{¶13} Hardy raises one Assignment of Error,

{¶14} "I. THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF THE CHARGES IN THE INDICTMENT AND AS A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION AND THE 5TH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

*Law and analysis*

**{¶15}** In his sole Assignment of Error, Hardy contends that the State failed to prove beyond a reasonable doubt that he knowingly created a risk of substantial physical harm to K.D. [Appellant's brief at 10-11].

**Standard of Review – Sufficiency of the Evidence**

**{¶16}** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99 (2013); *Hurst v. Florida*, 577 U.S. 92 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 2016-Ohio-8448, ¶ 13.

**{¶17}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 at n.4 (1997); *Walker,* 2016-Ohio-8295, ¶ 30. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Pountney*, 2018-Ohio-22, ¶ 19. "Thus, 'on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask

whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.' (Emphasis and brackets sic.) *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus." *State v. Walker*, 2016-Ohio-8295, ¶ 31 (O'Donnell, J,. dissenting).

**{¶18}** We will not disturb a verdict on appeal on sufficiency grounds unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *State v. Ketterer*, 2006-Ohio-5283, ¶ 94; *State v. Montgomery,* 2016-Ohio-5487, ¶ 74.

**Issue for Appellate Review**: Whether*, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Hardy was guilty beyond a reasonable doubt of knowingly causing or creating a substantial risk of physical harm to K.D. by means of strangulation or suffocation*

**{¶19}** Hardy was convicted of one count of strangulation by knowingly causing or creating a substantial risk of physical harm, in violation of R.C. 2903.18(B)(3).[1]

**{¶20}** "Strangulation or suffocation" is defined as "any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth." R.C. 2903.18(A)(1).

**{¶21}** R.C. 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances

---

[1] Hardy does not challenge his conviction for domestic violence.

when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶22} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself. *State v. Johnson*, 56 Ohio St.2d 35, 38 (1978), *citing State v. Huffman*, 131 Ohio St. 27(1936); *State v. Rojas*, 64 Ohio St.3d 131, 139 (1992); *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001) (footnote omitted). "Because the intent of an accused person is only in his mind and is not ascertainable by another, it cannot be proven by direct testimony of another person but must be determined from the surrounding facts and circumstances." *Huff, citing State v. Adams*, 1995 WL 360247(4th Dist. June 8, 1995) and *State v. Paidousis*, 2001 WL 436079 (10th Dist. May 1, 2001).

{¶23} Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(C).

{¶24} "Substantial risk" means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist. R.C. 2901.01(A)(8).

{¶25} Hardy does not deny he impeded the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth of K.D. Hardy argues only that, as he claims, the act lasted only for a few seconds, therefore "there is no way he could have known that he was *creating a risk of substantial physical*

*harm* to the victim in that short of time." (Emphasis added). Appellant's brief at 10-11. Hardy cites no authority in support of his assertion.

{¶26} In the case at bar, K.D. testified that Hardy put his arm around her neck, constricting her airway, and making it difficult for her to breathe. K.D. testified that the constriction by Hardy's arm caused her pain up to the point she blacked-out for thirty seconds. The following day, a police officer noticed red marks and striation in the area of K.D.'s neck and on the back of her arm. Photographs of the injuries were submitted to the jury, together with a video showing the events as they happened in real-time.

{¶27} "[W]hen there is no tangible, physical injury such as a bruise or cut, it becomes the province of the [trier of fact] to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event. *State v. Barnes*, 8th Dist. Cuyahoga No. 87153, 2006-Ohio-5239, ¶ 17, *quoting State v. Perkins*, 11th Dist. Portage No. 96-P-0221, 1998 WL 157000, * 3, 1998 Ohio App. LEXIS 1213, 7 (Mar. 27, 1998)." (Internal quotation marks omitted.) *In re: A.T.*, 2021-Ohio-2934, ¶ 67 (8th Dist.).

{¶28} In *State v. Cook,* the Court noted*, "*This court has said even '[t]he slightest injury,' including simply inflicting pain, constitutes physical harm. *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 35-36 (1st Dist.), *citing State v. Hustead*, 83 Ohio App.3d 809, 811, 615 N.E.2d 1081 (4th Dist. 1992) (slap on the face leaving no bruising or redness was physical harm). For example, in *Daniels*, this court found a defendant caused physical harm to his spouse when he grabbed her face and chin, without leaving a mark, but causing pain. *Id.* at ¶ 7." 2021-Ohio-3841, ¶ 11 (1st Dist.).

{¶29} Likewise, in *State v. Perkins,* the Court noted,

It has been held that an act, such as a slap, which evokes a grimace constitutes physical harm under the statute. *State v. Hustead* (1992), 83 Ohio App.3d 809, 811 - 812, 615 N.E.2d 1081. The Second District Court of Appeals held in *Dayton v. Hadley* (June 2, 1986), Montgomery App. No. 9509, unreported, 1986 WL 6330, at * 2, that there is no indication that pain must be evidenced by an outward physical manifestation in order to constitute physical harm. Moreover, the Legislative Service Note to R.C. 2901.01 states that "precedent trauma" is not a necessary predicate to a finding of physical harm. When there is no tangible, physical injury such as a bruise or cut, it becomes the province of the jury to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event. (Internal quotation marks omitted.)

1998 WL 157000, * 3 (11th Dist. Mar. 27, 1998). *See also In re: C.W.,* 2005-Ohio-3905, ¶ 33 (12th Dist.) (the red mark on victim's cheek incurred after defendant pushed her is sufficient to constitute the physical harm).

{¶30} When viewed in the light most favorable to the prosecution, the record contains evidence, that if believed, would convince the average mind that Hardy was guilty beyond a reasonable doubt of knowingly *causing physical harm to K.D.* by means of strangulation or suffocation. R.C. 2903.18(B)(3) provides that no person shall knowingly "cause *or* create a substantial risk of physical harm to another by means of strangulation or suffocation." (Emphasis added). Because there is evidence that if, believed, proves Hardy *caused physical harm* to K.D. by means of strangulation or

suffocation, his argument that, because the incident lasted only seconds, "there is no way he could have known that he was *creating a risk of substantial* physical harm to the victim" is feckless. *See* Appellant's brief at 10-11.

{¶31} We find, therefore, that the State met its burden of production regarding strangulation pursuant to R.C. 2903.18(B)(3) / (C)(3) and, accordingly, there was sufficient evidence to submit the case to the jury and, to support Hardy's conviction.

{¶32} Hardy's sole Assignment of Error is overruled.

{¶33} The judgment of the Richland County Court of Common Pleas is affirmed.


By Popham, J.,

Montgomery, P.J., and

Gormley, J., concur